3-16-0-1-6-1 People of the State of Illinois, Adelaide Rescuing Rockets v. Justin Blackwood, now by Brian Kovach Please proceed. May it please the Court. Good afternoon, Your Honors. Counsel. My name is Brian Kovach. I'm an assistant appellate defender with the Office of the State Appellate Defender, and I represent Mr. Justin Blackwood, defendant in this criminal matter. A jury found Mr. Blackwood guilty of driving under the influence of alcohol, primarily based on Officer Nick Wade's testimony on defendant's performance on field sobriety tests. However, even though Wade had a properly working dashboard camera and could have videotaped the encounter, Wade conducted the entirety of the field sobriety tests out of view of that camera. On appeal here, Mr. Blackwood argues that trial counsel was ineffective for failing to request IPI Civil 5.01 based on Wade's failure to produce a VR recording of the field sobriety tests. This case is guided by the familiar Strickland two-prong analysis of whether counsel's performance was deficient and whether this deficient performance prejudiced the defendant. Initially, counsel was unreasonable for failing to request the instruction. IPI Civil 5.01 provides that important part. If a party to this case has failed to offer evidence within his power to produce, he may infer that evidence would be adverse to that party. And it provides four specific elements for the jury to consider. Now here, the instruction has been applied to criminal cases. And in cases, has been applied to criminal cases in cases such, just like this one. Similar instructions have been provided and authorized in the statutory summary suspension case. That's People v. Aronson. And in another DUI case, which is People v. Camp. Second, typically the instruction is applied to lost or destroyed evidence. But by its plain terms, it's not confined simply to the destruction of evidence. The instruction does not even discuss lost or destroyed. By its plain terms, it applies to this case. Again, it states, if a party to this case has failed to offer evidence within his power to produce. It's the power to produce that's at issue here. And then the jury could infer that that evidence would have been adverse. Again, it speaks to the failure to produce evidence and should be applied to the failure to videotape a police citizen encounter. And this is because whether a video recording is made and then destroyed, or whether the evidence is manipulated so that it's worthless to the defendant, so that the field sobriety tests are conducted out of view of the camera, it has the same practical effect. The defendant is deprived of this important evidence in his case. Here, Officer Wade had the power to produce this evidence. He had a video camera system working in his car. He knew it. He knew how it worked. He had moved his car in other situations to specifically videotape the police citizen encounter. But he declined to do that in this case. But he's just a witness, isn't he? He's not a party to the case. He's not the state. He's a representative of the state in this instance. He's the state's witness. It would have been within his power to produce as the specific state's witness. He's the arresting officer in this case. He's required by statute to videotape these events. And he failed to do so knowing that this was going to be a criminal prosecution. But the state can't produce it if it doesn't exist. So are you saying that the state couldn't prosecute him? We're not asking to dismiss the case. We're asking for an adverse inference instruction for the officer's failure to produce this videotape. The entire event is up to the officer. He's guiding the event. He's instructing the driver where to perform the field sobriety test. He has the camera in his vehicle. He has the vehicle situated. He knows he's providing evidence that would be used in a criminal prosecution. He's required to videotape it under statute, specifically required to videotape that encounter. And he's failed to do so. So that should be construed against the state under this adverse inference instruction. And it's the legislative policy to mandate that the law enforcement events be recorded so we don't have this problem. And third, counsel's strategy was to undermine Wade's testimony. That's apparent from his closing argument. The adverse inference instruction would have reinforced counsel's strategy and given the jury a legal basis on which to discount Wade's failure to record the field sobriety tests. Therefore, counsel rendered deficient performance by failing to request this IPI 5.01. There's also a reasonable probability that the judge would have given the instruction. The judge was clearly bothered by Wade's failure to videotape the encounter. He said that he easily could have done so. He easily could have made it so these field sobriety tests were performed on video. But he failed to do so. And there was really no real excuse, according to the court. What about the injury? There's a prejudice component. That's right. It's prejudice. I mean, this guy was found at 3 o'clock in somebody else's driveway. Well, no, he was seen driving. He was seen driving. He was driving around. The police officer followed him, and then he pulled into the driveway. But that doesn't show impairment, Your Honor. It just shows he pulled into the driveway. The only evidence showing impairment in this case was his performance on those field sobriety tests. Well, there was testimony about making abrupt turns, that the strong odor of alcohol. There was testimony. You know, and then refusing the breathalyzer afterwards. There's all this evidence. Well, Officer Wade did testify that he turned around and he pulled into the parking lot. But the only traffic violation he observed was the failure to signal his turn. Otherwise, he drove in a safe and legal manner. He didn't fumble when bringing out his driver's license. He exited the vehicle in a normal fashion. The odor of alcohol and his pulling into the driveway, neither of those show impairment. He pulled into the gas station. He pulled into the gas station first, yeah, and then the officer pulled behind him. And then he pulled into an office. Actually, you must realize that a police car is following him. Apparently, sure. And the officer testified about bloodshot eyes, smelling of alcohol. Right. None of that shows impairment, though. It shows that he couldn't consume. Impaired speech? He did say he heard him slur, but he's never heard him talk before. He might slur on a normal basis. And none of that, Your Honor, shows impairment. It shows that he perhaps consumed an alcoholic beverage in the HDM test. It doesn't show impairment either. What inferences could a jury make when you refuse the breathalyzer? The jury in that case is allowed to make an adverse inference on his failure to perform on the breathalyzer, which is an adverse inference on the failure for the defendant to produce this evidence. Now, it's ironic that the jury can adversely infer this against the defendant, and if they can't make this adverse inference against the officer for failing to videotape the test. Well, in closing arguments, in this case, the trial counsel did say the lack of video indicated there was insufficient evidence to convict, right? Right. That was argued. So that was argued before the jury. Well, that's correct. That's correct, Your Honor. But if you were to offer this instruction, it would have given the jury a legal basis for them to discount his testimony on the field sobriety test. Your Honor, we have to keep in mind here that this trial occurred 45 months after the arrest. Without the videotape, all we have is the officer's independent recollection of the event 45 months later. Now, he should have videotaped this event so we had objective evidence. That's the legislative intent behind the statute, so that we have this objective evidence. Even if it is 45 months later, we know what happened on those field sobriety tests. And it's only those field sobriety tests that show impairment here. I mean, he did testify that he had bloodshot eyes and he seemed evasive by driving away from him, but he had his three buddies in the car who were apparently clearly intoxicated, according to the other officer's testimony. So none of that shows impairment. The only thing that shows impairment in this case is the field sobriety test, and that's Officer Wade's independent recollection, independent subjective recollection from 45 months ago. So in conclusion, Your Honors, counsel should have requested this adverse inference instruction because the officer failed to videotape the encounter. The judge would have given this adverse inference instruction because it's obvious he was bothered by the officer's failure to videotape the evidence. He said he could have easily videotaped this. It could have made all the difference in the world. And there's a reasonable probability that the resolved proceeding would have been different because it's just only those field sobriety tests that show impairment in this case. And, Your Honors, we ask that you reverse the conviction and remand this for a new trial. Thank you. Thank you. Good morning, Your Honors. Counsel, may it please the Court. My name is Stephen Rogers, and I represent the people of the State of Illinois. Your Honors, the State disagrees with the defendant for a number of reasons. Initially, all the cases cited by defendant where this adverse inference instruction has been mentioned in criminal cases have been in situations where the evidence, in fact, existed, and then the State either lost or destroyed the evidence. And that was actually key to the appellate court's finding or holding in Aronson, is that the video existed in the first instance and then was not transferred correctly. And similarly in Camp, a video existed, defense counsel had watched the video and said that video is key to our case. The video ends up being lost, and the appellate court doesn't say it's mandatory to give the adverse inference instruction, but they say it's a possibility. Now, in my view, the easiest way to dispose of this case is by the threshold finding a trial court would have to make. And that is that the trial court must determine that in all likelihood a party would have produced the evidence, except for the fact that the evidence would be unfavorable. And there's nothing about the police officer's conduct that indicates he thought the field sobriety tests were going to be unfavorable to the State. He pulls over a defendant who has made multiple evasive actions. He ends up in a stranger's driveway at 3 a.m. It's clear the individuals in the car are intoxicated. The defendant is removed. The officer smells a strong odor of alcohol on the defendant. And the officer simply moves the defendant to a flat surface to perform the field sobriety test. So even if one would disagree with the officer not getting in his car in what he described as a tight alleyway and reorienting the car, nothing about his actions indicates he thought the field sobriety test would be unfavorable. And additionally, on the prejudice prong, much of the same evidence. You have a defendant at 3 a.m. driving. He ends up in an alley, a stranger's driveway. The officer immediately smells the odor of alcohol. The defendant declines to take a breathalyzer test at the station. I mean, there was overwhelming evidence outside the field sobriety test which provided some evidence, but they weren't the type of overwhelming field sobriety test that you would sometimes see in a case. And on the first prong, the objective unreasonability, this court and People v. Houston, the key to the defense case was identification. And on appeal, the claim was that trial counsel was ineffective for failing to offer a jury instruction on identification. But this court said it wasn't objectively unreasonable because the defense nonetheless meaningfully tested the state's case. And that's exactly what happened here. It was almost as if the defense did such a great job but didn't take the one last step that a trial counsel thinks would have been proper. But there's no doubt that the trial counsel did test the state's case. His performance was not objectively unreasonable because there was no support in existing case law for an adverse inference instruction when the evidence itself never existed. And at the end of the day, the defendant was not prejudiced by trial counsel's actions. If this court has no further questions, the state respectfully requests that this court affirm defendant's conviction. Thank you, Your Honor. The state argues as it did in its opening brief that the notes on use state that the trial judge is supposed to find that the evidence would have been unfavorable to the party who's presenting it in the first place before allowing this instruction. That conflicts with the actual IPI and with the comments to the IPI. The comments state, and I'll quote, failure of a party to produce testimony or physical evidence within his control creates a presumption that the evidence if produced would have been adverse to him. That means that it's presumed that the evidence that the state failed to bring in would have been adverse rather than a finding of unfavorability. And then the third element in the IPI states, a reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him. So this notes on use, it's conflicting with these other portions of the IPI, and it's the IPI elements that should control. That's it. That is a reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him. Now, a police officer approaching a vehicle and after within one or two minutes of speaking to the driver knows how he's going to perform on these field sobriety tests. He knows if he's going to flat out fail them or if it's going to be a closer call. And it's within his control at that point to videotape these tests. And it's the legislative intention. There was some testimony that this was a tight area, and there was some question about whether the positioning of the police car would be able to take those tests. That was Officer Wade's excuse. It was kind of a tight area and there were other individuals, but there are other police officers arrived. And the trial judge found that he could have easily taped this encounter. So it's contrary to the trial judge's findings in this case. And so the trial court made the finding that he could have videotaped this. And under his statutory obligation to videotape it, he should have videotaped it. And that's the entire intent behind the recent legislative enactments is so that we have this evidence preserved. Either it could cement the state's case for it or it could assist in the truth-seeking process. And if there are no further questions, Your Honor. Thank you, Counsel. Thank you. We'll take this matter under advisement, take a break for lunch and then return in the afternoon call.